IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE BLACKWELL,  Plaintiff, | : : : | |
| v. | : : | Civil No. 5:22-cv-03360-JMG |
| LEHIGH VALLEY HEALTH NETWORK,  Defendant. | : : : | |

**MEMORANDUM OPINION**

GALLAGHER, J.                                                                                           January 23, 2023

## I.  OVERVIEW

Federal Courts have no province to question the validity, quality, or character of an individual's religious beliefs. Pursuit of religious liberty is among the oldest, most essential cornerstones of American democracy. In recognizing the right of an individual to assert a federal claim of religious discrimination against their former employer, it is this "very concept of ordered liberty" that requires courts to decide a "most delicate question"—not of whether a plaintiff's religious beliefs are reasonable, ethical, or well-founded—but only whether those beliefs are indeed religious. *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981).

Because Plaintiff's Complaint fails to sufficiently plead that her sincerely held beliefs in conflict with Defendant's COVID-19 nasal swab testing requirement are religious in nature, the Court must dismiss Plaintiff's Complaint without prejudice.

1

## II.   BACKGROUND

### a.   PLAINTIFF'S COMPLAINT

On August 22, 2022, Plaintiff, Nicole Blackwell, a nurse, filed a complaint alleging she was unlawfully terminated by her former employer, Defendant Lehigh Valley Health Network ("Complaint"). *See* Complaint (ECF No. 1). On October 19, 2022, Defendant filed a Motion to Dismiss the Complaint ("Motion"). *See* ECF No. 7. Plaintiff filed a Response in Opposition on November 2, 2022 ("Response"). *See* ECF No. 8. Defendant hired Plaintiff as a Registered Nurse in May 2011. Compl. at ¶ 1[1]. On August 24, 2021, Defendant issued a COVID-19 vaccine mandate for all staff. *Id.* at ¶ 3[2]. On September 7, 2021, Plaintiff submitted a written religious accommodation request, stating:

> I sincerely believe that injection with medical therapy which was derived from aborted fetal cells during the testing process [] and foreign [mRNA] is unholy and defiles the relationship I have with [G]od. I am a committed vegetarian and do not eat meat due to my spiritual beliefs. I cannot receive any treatment that contains derived cells and [mRNA] per my religious beliefs and philosophical beliefs.

*Id.* at ¶ 4[3]; pg. 12. Plaintiff stated that her religious beliefs in opposition to COVID-19 vaccination are rooted in her stance as a "[l]ife long anti-abortion advocate," her confirmation into the United Church of Christ at age 13, and her "[b]eliefs that many religious leaders are being pressured to turn away from [G]od and accept mRNA developed over the last several years." *Id.* at pg. 13. On September 15, 2021, Defendant granted Plaintiff's religious accommodation request and offered her the opportunity to submit to "regular COVID-19 screening tests" in lieu of vaccination. *Id.* at

---

[1] Plaintiff's Complaint contains multiple paragraphs numbered as 1. This citation refers to the numbered paragraph 1 appearing on Page 2 of the Complaint.
[2] Plaintiff's Complaint contains multiple paragraphs numbered as 3. This citation refers to the numbered paragraph 3 appearing on Page 3 of the Complaint.
[3] Plaintiff's Complaint contains multiple paragraphs numbered as 4. This citation refers to the numbered paragraph 1 appearing on Page 3 of the Complaint.

¶ 5. At that time, Defendant did not specify "the nature or modality" of the COVID-19 tests. *Id.* Plaintiff interpreted this "regular COVID-19 screening tests" requirement to mean "a 'self-screening' wherein she had to take her temperature at home and respond to a written questionnaire concerning any symptoms at home before reporting to work." *Id.*

Around November 15, 2021, Defendant informed Plaintiff she was required to take biweekly COVID-19 tests via nasal swab in the presence of her manager. *Id.* at ¶ 8. Plaintiff alleges this amounted to a change in the terms of her religious accommodation. *Id.* Plaintiff objected to the nasal swab testing, advising Defendant that "observance of her religious beliefs forbids insertion of an unwanted foreign objection into her body." *Id.* As an alternative, Plaintiff requested she be permitted to take a saliva test. *Id.*

Despite Plaintiff's offer to take a saliva test instead of nasal swab testing, Plaintiff alleges that Defendant failed to engage in any interactive process concerning the same, and Defendant did not advise her to submit another religious accommodation request form. *Id.* On November 19, 2021, Defendant suspended Plaintiff without pay. *Id.*

On November 23, 2021, Plaintiff sent an e-mail to Defendant "express[ing] [her] beliefs" regarding "invasive" COVID-19 "testing." *Id.* at ¶ 9; pg. 21. Plaintiff's e-mail states that if Defendant "wishes to protect staff and patients from possible infections, then it should be acknowledged that weekly [COVID-19] testing should be required for all staff" because "a growing body of peer-reviewed research is demonstrating that covid vaccinated people are just as likely to contract and spread this illness." *Id.* Plaintiff's e-mail then cites to a medical journal article to support the proposition that "[t]here is increasing evidence that vaccinated individuals continue to have a relevant role in [COVID-19] transmission." *Id.* Plaintiff's e-mail states that Plaintiff is

3

"willing to abide by reasonable accommodations that do not discriminate against me for my religious beliefs." *Id.*

On December 6, 2021 Plaintiff sent another email to Defendant asking whether "there has been any progress on the consideration of using saliva tests or religious exemptions for the nasal swab?" *Id.* at ¶ 10; pg. 23.

That same day, "[r]ather than receive a response to these lines of inquiry," Plaintiff's employment was terminated by Defendant. *Id.* at ¶ 10.

Plaintiff also alleges that, in October 2021, Defendant issued an influenza vaccine mandate for all staff. *Id.* at ¶ 6. On October 26, 2021, Plaintiff submitted a written religious accommodation request for the influenza vaccine, indicating that "while she had received vaccines in the past, including the influenza vaccine, her religious beliefs changed since the last time she received an influenza vaccine and that for her to do so again would violate said beliefs." *Id.* Specifically, Plaintiff's written religious accommodation request states:

> [I] [h]ave [] religious beliefs over the past years that have changed numerous aspects of my life and impact what I can allow in my body because this impacts my relationship with [G]od. I have given up meat, supplements, medications. I have a bona fide religious and philosophical disagreement with flu vaccines, abortion, and consumption of meat.

*Id.* at pg. 16. On October 29, 2021, Defendant denied Plaintiff's accommodation request. *Id.* at ¶ 7. In so doing, Plaintiff alleges Defendant failed to engage in any interactive process with Plaintiff. *Id.* "However," the Complaint avers, "Defendant took no adverse employment action against [Plaintiff] immediately following its denial of the influenza vaccine religious accommodation request." *Id.*

4

Plaintiff also claims, separately from her allegations of employment discrimination, that, "Plaintiff performed numerous hours of work over the final 2+ years of her employment from which Defendant benefitted, but for which she was uncompensated." *Id.* at ¶ 2[4]. Beginning on January 1, 2019, Plaintiff alleges Defendant began requiring nursing staff, including Plaintiff, to routinely perform uncompensated work. *Id.* First, Plaintiff alleges that upon arriving to work their shift, nursing staff were not permitted to "badge-in" for purposes of compensation calculations until either 7 a.m. or 7 p.m., "depending on whether they were working the day or night shift." *Id.* Yet, Plaintiff alleges, Defendant required nursing staff to begin working their shifts prior to 7 a.m. or 7 p.m. anyway, resulting in staff having to perform uncompensated work. *Id.* Second, Plaintiff alleges that Defendant required nursing staff to "badge-out" for a mandatory 30-minute lunch break each shift. *Id.* In practice, however, Plaintiff continued to work during this 30-minute period of uncompensated time because "Plaintiff could not safely perform her professional responsibilities as a nurse if she had to take a 30-minute break without placing her patients at risk." *Id.*

Plaintiff's Complaint brings four counts. Count One alleges Defendant's conduct constitutes unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964. *Id.* at pg. 6. Count Two brings a related state law claim, alleging Defendant's conduct constitutes unlawful employment discrimination in violation of the Pennsylvania Human Rights act. *Id.* at pg. 7.

---

[4] Plaintiff's Complaint contains multiple paragraphs numbered as 2. This citation refers to the numbered paragraph 2 appearing on Pages 2-3 of the Complaint.

Count Three alleges Defendant violated the Pennsylvania Wage Payment and Collection law by compelling Plaintiff to perform uncompensated work before her shifts and during her lunch breaks. *Id.* at pg. 8.

Count Four of Plaintiff's Complaint for Unjust Enrichment alleges Defendant has "become unjustly enriched by improperly terminating Plaintiff to avoid its financial obligations to her, and for its failure to justly compensate her for all work she performed prior to her termination, and failing to disgorge said gains(s)." *Id.* at 9.

### b. DEFENDANT'S MOTION TO DISMISS

Defendant filed a Motion to Dismiss Plaintiff's Complaint in its entirety ("Motion") on October 19, 2022. *See* ECF No. 7. Defendant contends this Court should dismiss Count One, Plaintiff's Title VII claim, because Plaintiff fails to plausibly plead that she holds a sincerely held religious belief conflicting with Defendant's required bi-weekly COVID-19 testing by way of a nasal swab. *Id.* at pg. 7-8. To the extent Plaintiff alleges religious discrimination related to the influenza vaccine, Defendant argues this too must be dismissed because Plaintiff fails to allege she sustained an adverse employment action for not receiving the influenza vaccine. *Id.* at pg. 12. Defendant contends this Court should dismiss Plaintiff's remaining claims: Counts Two, Three, and Four, because they are state law claims related to Plaintiff's Title VII claim. *Id.* at pg. 13.

Plaintiff filed a Brief in Opposition to Defendant's Motion on November 2, 2022 ("Response"). *See* ECF No. 8. Plaintiff's Response first contends that to the extent Defendant seeks dismissal of Plaintiff's Complaint with prejudice, Defendant improperly seeks summary judgment. *Id.* at pg. 4. Next, Plaintiff contends her beliefs are religious, and that Defendant recognized Plaintiff's beliefs were religious when Defendant granted Plaintiff's request for an exemption from being vaccinated for COVID-19. *Id.* at pg. 9. Thereafter, Plaintiff claims,

6

Defendant "unilaterally imposed a new work requirement of Plaintiff based upon her unvaccinated status that conflicted with the same – the requirement that an object must now be inserted into her body against her will in the form of a nasal swab COVID-19 test." *Id.* Plaintiff claims "that she immediately apprised Defendant of the conflict between her religious beliefs and the nasal swab testing requirement, and proposed an alternate reasonable accommodation in the form of a saliva test." *Id.* at pg. 10. Plaintiff claims Defendant's refusal to engage in the required "interactive process" with Plaintiff after she "raised her faith-based objection to the nasal swab requirement" is "indicative of an intention to discriminate against any employee who expresses a sincerely held religious belief[] against the unwanted invasion of their God-given bodies under a disparate impact theory." *Id.* at pg. 11.

### III.   LEGAL STANDARD

Defendant moves to dismiss Plaintiff's claim pursuant to Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 Fed. Appx. 147, 149 (3d. Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well

as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. ANALYSIS

### a. Count One is Dismissed Without Prejudice: Because Plaintiff Fails to Plead Her Belief Conflicting With Defendant's COVID-19 Testing Requirement is Religious, Plaintiff has Failed to Plead a Violation of Title VII of the Civil Rights Act of 1964

Count One of Plaintiff's Complaint alleges Defendant violated Title VII of the Civil Rights Act of 1964. Compl. at pg. 6. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…religion." 42 U.S.C. § 2000e-2(a)(1). The term "religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's…religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a *prima facie* case of religious discrimination under Title VII, an employee must show: (1) they "held a sincere religious belief that conflicted with a job requirement," (2) they informed their employer of the conflict, and (3) they were "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017). To survive a motion to dismiss, an employee need not "establish each element" of this test, but rather, "simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, No. 4:21-cv-01903, 2022 U.S. Dist. LEXIS 154512 at *9 (M.D. Pa. Aug. 26, 2022) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

8

Here, Defendant contends that Plaintiff fails to plausibly plead the first prong of her *prima facie* religious discrimination claim because, under the Third Circuit's test established in *Africa v. Commw. of Pa.*, 662 F.2d 1025 (3d Cir. 1981), Plaintiff's objection to biweekly COVID-19 testing by way of a nasal swab on the grounds "that observance of her religious beliefs forbids insertion of an unwanted foreign object[] into her body" is not a religious belief under law. *See* Defendant's Motion, ECF No. 7 at pg. 8.

It is not this Court's authority to "question the centrality of particular beliefs or practices of faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). Determination of whether Plaintiff's beliefs are religious must not "turn upon a judicial perception of the particular belief or practice in question." *Ambrose v. Gabay Ent & Assocs., P.C.*, No. 12-5453, 2013 U.S. Dist. LEXIS 115353 at *9 (E.D. Pa. Aug. 15, 2013) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981)). "Courts 'are not free to reject beliefs because they consider them 'incomprehensible,' because 'religious beliefs need not be acceptable, logical, consistent, or comprehensible to others.'" *Id.* at *10 (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965) then *Thomas*, 450 U.S. at 714).

This Court's inquiry into whether Plaintiff has plausibly plead the first prong of her *prima facie* religious discrimination claim is limited only "to determining whether the belief is (1) 'sincerely held' and (2) religious within the plaintiff's 'own scheme of things.'" *Id.* at *12 (quoting *Welsh v. United States*, 398 U.S. 333, 339 (1970)). With respect to part one (1) of this inquiry, the Court finds Plaintiff's beliefs are sincerely held.

With respect to part two (2) of this inquiry, this Court is conscious that determining whether Plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662

F.2d 1025, 1031 (3d Cir. 1981). However, "the very concept of ordered liberty" precludes this Court from allowing any person "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Id.* (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)).

In determining whether an employee's beliefs are religious, the Third Circuit considers three factors first articulated in *Africa v. Pennsylvania*: whether the beliefs (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) are "comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Brown v. Children's Hosp. of Phila.*, 794 Fed. Appx. 226, 227 (3d Cir. 2020) (quoting *Fallon v. Mercy Catholic Med. Ctr. Of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)). With respect to the first factor, beliefs address "fundamental" and "ultimate" questions when they "consider and attempt to come to terms with what could best be described as 'ultimate' questions-questions having to do with, among other things, life and death, right and wrong, good and evil." *Africa*, 662 F.2d at 1033. With respect to the second factor, beliefs must be "comprehensive" to be religious – "a religion must consist of something more than a number of isolated, unconnected ideas" indeed, a "religion is not generally confined to one question or one moral teaching; it has a broader scope. It lays claim to an ultimate and comprehensive 'truth.'" *Id.* at 1035 (quoting *Malnak v. Yogi*, 592 F.2d 197, 209 (3d Cir. 1979)). As for the third factor, "in ascertaining whether a set of ideas should be classified as a religion" courts look to "any formal, external, or surface signs that may be analogized to accepted religions" such as "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with the traditional religions." *Id.* at 209.

"Claims of religious discrimination present a unique and difficult challenge for judges." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, No. 21-cv-4024, 2021 U.S. Dist. LEXIS 183966 at *13 (E.D. Pa. Sept. 27, 2021). While judges "are ill-equipped to examine the breadth and content of an avowed religion…when an individual invokes the first amendment to shield himself or herself from otherwise legitimate state regulation" courts "are required to make such uneasy differentiations." *Id.* (quoting *Africa*, 662 F.2d at 1031). Mindful of this difficult and uneasy task, the Court is guided by relevant case law in this circuit.

In *Fallon*, an employee brought a claim for Title VII religious discrimination after he was terminated for refusing to receive a flu vaccine. *Fallon*, 877 F.3d at 488. There, the employee did "not belong to any religious organization" but held "strong personal beliefs, opposing the flu vaccine." *Id.* In his complaint, the employee laid out his beliefs, which consisted of statements and quotes such as "[d]o not believe in anything simply because you have heard it" and "[b]ut after observation and analysis, when you find that anything agrees with reason and is conducive to the good and benefit of one and all, then accept it and live up to it." *Id.* at 492. The employee believed that "one should not harm their own body and…the flu vaccine may do more harm than good" and "if he yielded to coercion and consented to the hospital['s] mandatory [flu vaccination] policy, he would violate his conscience as to what is right and what is wrong." *Id.* The district court dismissed the employee's claims with prejudice, and the Third Circuit affirmed. *Id.* at 493-94.

The Third Circuit held the first two *Africa* factors were not satisfied because the employee's beliefs did not amount to "a comprehensive system of beliefs about fundamental or ultimate matters." *Id.* at 492. Instead, the court held, the employee applied "an isolated moral teaching" to "not harm your own body" to come to the conclusion that the flu vaccine is morally wrong." *Id.* at 492. Moreover, the Court held this basis of refusal, "his concern that the flu vaccine

11

may do more harm than good…is a medical belief, not a religious one." *Id.* Lastly, the Court held that the employee's beliefs did not satisfy the third *Africa* factor because the employee's views "are not manifested in formal and external signs, such as 'formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with the traditional religions.'" *Id.* (quoting *Malnak v. Yogi*, 592 F.2d 197, 209 (3d Cir. 1979)).

An employee fails to state a Title VII religious discrimination claim if the employee's beliefs are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490 (quoting *United States v. Seeger*, 380 U.S. 163, 165 (1965)). In *Brown*, the Third Circuit again applied the *Africa* factors to hold a former employee failed to state a Title VII religious discrimination claim against her employer where her opposition to an employee vaccination requirement was "a medical belief, not a religious one." *Brown*, 794 Fed. Appx. at 227-28.

Particularly relevant to this Court's analysis is the Middle District of Pennsylvania's ruling in *Finkbeiner v. Geisinger Clinic*, which concerned a remarkably similar set of facts to those at issue here. In *Finkbeiner*, the plaintiff brought a Title VII religious discrimination claim against her former employer after she was terminated for failing to comply with a workplace requirement that all unvaccinated employees be tested biweekly for COVID-19. *Finkbeiner v. Geisinger Clinic*, No. 4:21-cv-01903, 2022 U.S. Dist. LEXIS 154512 at *1 (M.D. Pa. Aug. 26, 2022).

The plaintiff sought a religious exemption from her employer's testing requirement, writing "I am a Christian and hold a sincere religious belief that I have a God given right to make my own choices regarding what is good or bad for me. The Bible says that man has free will and I am using my free will, granted to me by God, to reject the testing conditions placed on my

approved religious exemption." *Id.* at *6. The Court dismissed the plaintiff's Title VII claim and held that her beliefs about testing were not religious because, "her belief that she has a 'God given right to make her own choices'—which, implicitly, her employer must unfailingly respect—would amount to 'a blanket privilege' and a 'limitless excuse for avoiding all unwanted obligations.'" *Id.* at *10 (quoting *Africa*, 662 F.2d at 1031). "Though fungible enough to cover anything that Finkbeiner trains it on, this belief" the court held, "is an 'isolated moral teaching'…not a comprehensive system of beliefs about fundamental or ultimate matters." *Id.* (quoting *Fallon*, 877 F.3d at 492).

Importantly, an employee's complaint must provide sufficient information about the nature of the employee's beliefs in order to state a claim for Title VII religious discrimination. In *Addison*, the employee brought a Title VII religious discrimination claim against her former employer, alleging she was discriminated against because of her "highly spiritual" nature. *Addison v. Amazon.com, Inc.*, No. 22-01071, 2022 U.S. Dist. LEXIS 127642 at *12 (D. N.J. July 19, 2022). Because the employee "fail[ed] to provide any additional information about the nature of her beliefs" the court held "she cannot establish that she held sincere religious beliefs" and dismissed the employee's claim. *Id.* at *16.

By contrast, where a complaint pleads sufficient information to establish the nature of the plaintiff's religious beliefs, dismissal for failure to establish a sincerely held religious belief is improper – as it is not for this Court to make "a scriptural determination" to the legitimacy or quality of a plaintiff's religious beliefs. *Ambrose*, 2013 U.S. Dist. LEXIS 115353 at *16 (quoting *Thomas*, 450 U.S. at 716).

13

In *Kaite*, the plaintiff, a school bus driver, brought a Title VII religious discrimination claim against her former employer after she was terminated for refusing to be fingerprinted for a background check. *Kaite v. Altoona Student Transp., Inc.*, 296 F. Supp. 3d 736, 738 (W.D. Pa. 2017). The plaintiff requested a religious accommodation, and informed her employer that she "is a devout Christian" and that, "according to her sincerely held religious beliefs, the Book of Revelation prohibits the 'mark of the devil,' which she believes includes fingerprinting, and that she will not get into Heaven if she submits to fingerprinting." *Id.* The court declined the defendant's motion for judgment on the pleadings and held the plaintiff "alleged facts that give rise to a plausible claim for religious discrimination" and "[a]t this early stage, nothing more is required." *Id.* at 742 (citing *Iqbal*, 556 U.S. at 679).

In *Ambrose*, an employee brought a Title VII religious discrimination claim against her former employer after allegedly being terminated for refusing to wear a name badge "that contained a list of workplace rules under the heading 'Our Ten Commandments.'" *Ambrose*, 2013 U.S. Dist. LEXIS 115353 at *1. The employee "told management that wearing an altered 10 commandments around her neck offended her religious beliefs because they were not the Ten Commandments proscribed by her religious Catholic faith." *Id.* at *3 (internal quotations omitted). The defendants moved to dismiss the complaint on the grounds that the employee's objection to wearing the badge "was a 'personal preference' that is not entitled to statutory protection because, *in their view*, the badge had 'absolutely nothing to do with religion.'" *Id.* at *7 (emphasis in original).

Specifically, the defendants argued "there is no deeply held Roman Catholic belief that prohibits or forbids adherents from wearing a name badge that characterizes secular guidelines as 'Our 10 Commandments.'" *Id.* at *14. The court rejected this argument and held it could not, on a

14

motion to dismiss, "be an 'arbiter of scriptural interpretation' and determine whether the employee "is misreading the tenants of her Roman Catholic faith." *Id.* at \*15 (quoting *Thomas*, 450 U.S. at 716). "Not only is it inappropriate for a court to make a factual determination in a 12(b)(6) motion to dismiss," the court held, "a scriptural determination is 'not within the judicial function and judicial competence.'" *Id.* at \*16 (quoting *Thomas*, 450 U.S. at 716).

Here, Plaintiff first averred that her sincerely held Christian religious beliefs conflicted with Defendant's requirement that all staff be vaccinated for COVID-19. Compl. at ¶ 4[5]. In support, Plaintiff attaches the religious accommodation request form she submitted to Defendant on September 7, 2021. *Id.* at ¶ 4[6]; pg. 11-13. Plaintiff's request form states she has religious and philosophical objections to COVID-19 vaccination, cites a bible passage, states that Plaintiff is a member of the United Church of Christ and that Plaintiff believes taking the COVID-19 vaccine would defile Plaintiff's relationship with God insofar as the vaccine was "derived from aborted fetal cells during the testing process" and contains "foreign [mRNA]" and "proteins that have the potential to embed into our [G]od-given DNA." *Id.* at pg. 11-13. Defendant granted this accommodation request and permitted Plaintiff to submit to "regular COVID-19 screening tests' in lieu of vaccination. *Id.* at ¶ 5.

Plaintiff again sought religious accommodation, this time from the testing requirement. *Id.* at ¶ 8. Plaintiff told her supervisor she cannot submit to nasal swab testing because "observance of her religious beliefs forbids insertion of an unwanted foreign object into her body," and requested permission to take a saliva test instead. *Id.* Plaintiff's Complaint attaches a November

---

[5] Plaintiff's Complaint contains multiple paragraphs numbered as 4. This citation refers to the numbered paragraph 1 appearing on Page 3 of the Complaint.
[6] Plaintiff's Complaint contains multiple paragraphs numbered as 4. This citation refers to the numbered paragraph 1 appearing on Page 3 of the Complaint.

15

23, 2021 e-mail she sent to Defendant. *Id.* at pg. 21-22. Plaintiff's e-mail does not elaborate any further on the source or nature of her purported religious beliefs which prevent her from taking the nasal swab COVID-19 tests. *Id.* at pg. 21-22. Rather, Plaintiff's e-mail challenges the factual and scientific basis for Defendant's testing requirement, contending that COVID-19 testing is "ineffective" and that vaccinated individuals "are just as likely to contract and spread" COVID-19 as unvaccinated individuals, and cites to a medical journal article as supporting evidence. *Id.* at pg. 21-22.

Plaintiff identifies as a member of the United Church of Christ and states that "observance of her religious beliefs forbids insertion of an unwanted foreign object into her body." Compl. at ¶ 8. Plaintiff fails to plead any additional information about the religious nature of her beliefs.[7] Rather, the additional information provided in Plaintiff's November 15, 2021 e-mail challenges Defendant's ***factual*** and ***scientific*** basis for imposing the testing requirement, which suggests the basis for Plaintiff's belief is "political, sociological, or philosophical" – and not religious. *Fallon*, 877 F.3d at 490 (quoting *Seeger*, 380 U.S. at 165 (1965)).

Moreover, application of the *Africa* factors further compels this Court to find that Plaintiff's Complaint does not state a claim of Title VII religious discrimination because, although sincerely held, Plaintiff has not sufficiently pleaded that her applicable belief is religious. Under the first two *Africa* factors, the Court must consider whether Plaintiff's beliefs "address fundamental and ultimate questions having to do with deep and imponderable matters" and

---

[7] Although Plaintiff's Complaint and the attachments thereto provide far more substantial information regarding nature of Plaintiff's religious beliefs as applied to Defendant's vaccination requirement, these beliefs, which primarily concern Plaintiff's religious opposition to abortion, are not applicable to, and Plaintiff does not assert they apply to, Defendant's biweekly COVID-19 nasal testing requirement.

16

whether they are "comprehensive in nature." *Brown*, 794 Fed. Appx. at 227 (quoting *Fallon*, 877 F.3d at 490). Plaintiff identifies as a member of the United Church of Christ, which is a comprehensive religion. However, Plaintiff's belief against the "insertion of an *unwanted* foreign object into her body" is more "an isolated moral teaching" as opposed to a "comprehensive system of beliefs about fundamental or ultimate matters." Compl. at ¶ 8 (emphasis added); *Finkbeiner*, 2022 U.S. Dist. LEXIS 154512 at *10 (quoting *Fallon*, 877 F.3d at 492).

Plaintiff's Complaint and the attachments thereto fail to plead any information as to the nature of Plaintiff's "religious beliefs" that "forbid[] insertion of an *unwanted* foreign object into her body." Compl. at ¶ 8 (emphasis added). As with the employee's belief in *Finkbeiner*, Plaintiff's belief that she is forbidden from doing something Plaintiff herself deems "*unwanted*" is, absent further pleading regarding the religious nature of the belief, akin to asserting "a blanket privilege…for avoiding all unwanted obligations." *Finkbeiner*, 2022 U.S. Dist. LEXIS 154512 at *10 (quoting *Africa*, 662 F.2d at 1031). Under *Africa*, this Court is precluded from allowing "any [] person, a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Yoder*, 406 U.S. at 215-16).

Under the third *Africa* factor, the Court must consider whether Plaintiff's beliefs "are accompanied by certain formal and external signs." *Brown*, 794 Fed. Appx. at 227 (quoting *Fallon*, 877 F.3d at 490). Such formal and external signs certainly exist with respect to the United Church of Christ. It is less clear that Plaintiff's beliefs forbidding "insertion of an unwanted foreign object into her body" are accompanied by such signs. Unlike in *Ambrose*, where the plaintiff's objection arose from her interpretation of and religious belief in the Ten Commandments, and in *Kaite*, where the plaintiff's objection arose from her interpretation of and religious belief in the Book of Revelation's prohibition on the 'mark of the devil,' Plaintiff fails to plead a religious source or

nature to her belief "forbid[ding] insertion of an unwanted foreign object into her body." Compl. at ¶ 8.

To survive a motion to dismiss a Title VII religious discrimination claim, a plaintiff must "allege sufficient facts" that, if proven, would establish (1) they "held a sincere religious belief that conflicted with a job requirement," (2) they informed their employer of the conflict, and (3) they were "disciplined for failing to comply with the conflicting requirement." *Fallon*, 877 F.3d at 490. Because Plaintiff's Complaint, as drafted, fails to allege sufficient information to claim Plaintiff's sincerely held belief conflicting with Defendant's COVID-19 testing requirement is religious, the Court must dismiss Plaintiff's Title VII claim without prejudice.[8]

---

[8] Plaintiff also fails to plead a claim for religious discrimination under Title VII arising out of Plaintiff's religious objection to Defendant's flu vaccination requirement, because Plaintiff does not allege that she was "disciplined for failing to comply with" Defendant's flu vaccination requirement. *Fallon*, 877 F.3d at 490. Indeed, Plaintiff's Complaint expressly states, "Defendant took no adverse employment action against [Plaintiff] immediately following its denial of the influenza vaccine religious accommodation request" and pleads that she was suspended and ultimately terminated by Defendant only after requesting religious accommodation from Defendant's requirement that she test for COVID-19 via nasal swab. *See* Compl. at ¶ 7-10. Moreover, Defendant's Motion contends that Plaintiff "alleges no facts to support that her termination had anything to do with her denial of a religious exemption from the influenza vaccine." *See* Defendant's Motion at pg. 12. Neither Plaintiff's Complaint (ECF No. 1) nor Plaintiff's Response (ECF No. 8) assert that Plaintiff was suspended, and ultimately terminated by Defendant for her refusal to take the influenza vaccine.

Plaintiff's Response contends that Plaintiff's Complaint alleges sufficient facts to plead a cause of action for religious discrimination under Title VII pursuant to three theories of liability: failure to accommodate, disparate treatment, and retaliation. *See* Plaintiff's Response at pg. 10 (ECF No. 8). Because Plaintiff's Complaint fails to plead that her suspension and termination was due to a sincerely held ***religious*** belief, Plaintiff's Complaint fails to plead a cause of action for religious discrimination under Title VII pursuant to any of these theories of liability. *See Wallace v. City of Philadelphia*, No. 06-4236, 2010 U.S. Dist. LEXIS 42437 at *21 (E.D. Pa. Apr. 26, 2010) ("In the Third Circuit, employees may rely on two different theories to establish a claim for religious discrimination: 'disparate treatment' ***on account of religion***, or 'failure to accommodate' ***religious*** beliefs.") (emphasis added) (*citing Abramson v. William Paterson College of N.J.*, No. 1:19-cv-1507, 260 F.3d 265, 281 (3d Cir. 2001)); *Refat v. Franklin Fin. Servs. Corp.*, 2021 U.S. Dist. LEXIS 117768 at *15 n.6 (M.D. Pa. June 24, 2021) (holding an employee fails to state a Title VII

### b. Counts Two, Three, and Four are Dismissed Without Prejudice: The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), a federal district court may decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction." Because this Court dismisses Count One of Plaintiff's Complaint, brought under Title VII of the Civil Rights Act of 1964 over which this Court held original federal question jurisdiction pursuant to 28 U.S.C. § 1331, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See Diprato v. Bernstiel*, No. 21-507, 2022 U.S. Dist. LEXIS 11962 at *15 n.1 (E.D. Pa. Jan. 24, 2022) (after dismissing Title VII claim, dismissing Plaintiffs' state law claims as well, holding "[a]s this case is in the early stages of litigation, there is no compelling reason to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims."); *Goodwin v. Seven-Up Bottling Co.*, No. 96-cv-2301, 1996 U.S. Dist. LEXIS 15448 at *19 (E.D. Pa. Oct. 21, 1996) (declining to exercise supplemental jurisdiction over related state law claims after dismissing Title VII count, holding "retaining the state law claims will not serve the court's interest in fairness to the litigants. Because it is a relatively early stage in this litigation, the decision to dismiss the state claims at this point will occur before substantial expenditure of time, effort, and money by the parties in preparing the state claims for trial in federal court.").

Moreover, to the extent Counts Three and Four of Plaintiff's Complaint bring state law claims arising out of Defendant's alleged policy of requiring employees to perform uncompensated

---

retaliation claim based on an employer's denial of a religious accommodation request "because 'merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a ***religious*** accommodation'") (emphasis added) (quoting *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018)).

19

work before scheduled shifts and during lunch breaks, these claims must be dismissed on the additional grounds that the Court is without discretion to assert supplemental jurisdiction over these claims because they are unrelated to Plaintiff's Title VII religious discrimination claim, and therefore "unrelated to a cause of action under federal law." *Pasquale v. Gen. Scis., Inc.*, No. 09-1735, 2010 U.S. Dist. LEXIS 38666 at *12 (E.D. Pa. Apr. 19, 2010). See also *Lyon v. Whisman*, 45 F.3d 758, 762-63 (3d Cir. 1995) (holding that where "[t]he only link between" a plaintiff's federal and state law claim "is the general employer-employee relationship between the parties" supplemental jurisdiction does not exist).

V. **CONCLUSION**

Based on the foregoing, this Court dismisses Plaintiff's Complaint without prejudice. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge