**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

NICOLE BLACKWELL,                               :
               Plaintiff,               :
                              :
               v.                               :       Civil No. 5:22-cv-03360-JMG
                              :
LEHIGH VALLEY HEALTH NETWORK,   :
               Defendant.              :

_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                        **September 6, 2023**

## I.   OVERVIEW

    Plaintiff brings a religious discrimination claim under Title VII of the Civil Rights Act of 1964 against her former employer, Defendant, after Plaintiff was terminated for failing to comply with Defendant's COVID-19 testing requirement for employees. After granting dismissal of Plaintiff's original Complaint without prejudice, the Court now considers Plaintiff's Amended Complaint. Although the Amended Complaint pleads additional facts explaining Plaintiff's sincerely-held beliefs, Plaintiff did not inform her employer, Defendant, of these newly-plead beliefs at the time she sought her religious accommodation.

    Accordingly, and upon consideration of the beliefs Plaintiff ***did inform*** Defendant of, because Plaintiff's Amended Complaint fails to sufficiently plead that these sincerely held beliefs in conflict with Defendant's COVID-19 nasal swab testing requirement are religious in nature, the Court must dismiss Plaintiff's Complaint with prejudice.

## II.   BACKGROUND

### a.   PROCEDURAL HISTORY

On August 22, 2022, Plaintiff, Nicole Blackwell, a nurse, filed a complaint alleging she was unlawfully terminated by her former employer, Defendant Lehigh Valley Health Network ("Complaint"). *See* Complaint (ECF No. 1). On October 19, 2022, Defendant filed a Motion to Dismiss the Complaint ("Motion"). *See* ECF No. 7. Plaintiff filed a Response in Opposition on November 2, 2022 ("Response"). *See* ECF No. 8.

Plaintiff's Complaint brought four counts. Count One alleged Defendant's conduct constitutes unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964. *Id.* at pg. 6. Count Two brought a related state law claim, alleging Defendant's conduct constitutes unlawful employment discrimination in violation of the Pennsylvania Human Rights act. *Id.* at pg. 7. Count Three alleged Defendant violated the Pennsylvania Wage Payment and Collection law by compelling Plaintiff to perform uncompensated work before her shifts and during her lunch breaks. *Id.* at pg. 8. Count Four of Plaintiff's Complaint for Unjust Enrichment alleged Defendant has "become unjustly enriched by improperly terminating Plaintiff to avoid its financial obligations to her, and for its failure to justly compensate her for all work she performed prior to her termination, and failing to disgorge said gains(s)." *Id.* at 9.

On January 23, 2023, this Court granted Defendant's Motion to Dismiss, finding Plaintiff's Complaint failed to sufficiently plead that her sincerely held beliefs in conflict with Defendant's COVID-19 nasal swab testing requirement are religious in nature. *See* ECF No. 14 at pg. 1. Accordingly, the Court dismissed Plaintiff's Complaint without prejudice. *See* ECF No. 15.

Thereafter, the Plaintiff filed an Amended Complaint on March 11, 2023. *See* ECF No. 17. Once again, Defendant filed a Motion to Dismiss on March 21, 2023. *See* ECF No. 18. Plaintiff filed a Response in Opposition on April 12, 2023. *See* ECF No. 19. Defendant's Motion to Dismiss is ripe for adjudication.

### b. PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's Amended Complaint identifies Plaintiff as "a female U.S. citizen who was confirmed in the United Church of Christ as a child, but who had since converted as an adult to become a Marcionite Christian, which is a born-again Pre-Nicene Christian sect." *See* Amended Complaint at ¶ 2. [ECF No. 17]. Defendant, Lehigh Valley Health Network, operates various hospitals and healthcare facilities in Pennsylvania. *Id.* at ¶ 3. Plaintiff was hired by Defendant as a Registered Nurse in May 2011. *Id.* at ¶ 6.

On August 24, 2021, Defendant issued a COVID-19 vaccine mandate for all staff. *Id.* at ¶ 7. On September 7, 2021, Plaintiff submitted a written religious accommodation request, stating:

> 1 Corinthians 6:19 states do you not know that your body is the/a temple of the holy spirit, who is in you, whom you have from God? I sincerely believe that injection with medical therapy which was derived from aborted fetal cells during the testing process [] and foreign [mRNA] is unholy and defiles the relationship I have with [G]od. I am a committed vegetarian and do not eat meat due to my spiritual beliefs. I cannot receive any treatment that contains derived cells and [mRNA] per my religious beliefs and philosophical beliefs.

*Id.* at ¶ 8; pg. 16. Plaintiff stated that her religious beliefs in opposition to COVID-19 vaccination are rooted in her stance as a "[l]ife long anti-abortion advocate," her confirmation into the United Church of Christ at age 13, and her "[b]eliefs that many religious leaders are being pressured to turn away from [G]od and accept mRNA developed over the last several years." *Id.* at pg. 17. On September 15, 2021, Defendant granted Plaintiff's religious accommodation request and offered her the opportunity to submit to "regular COVID-19 screening tests" in lieu of vaccination. *Id.* at

¶ 9. At that time, Defendant did not specify "the nature or modality" of the COVID-19 tests. *Id.*
Plaintiff interpreted this "regular COVID-19 screening tests" requirement to mean "a 'self-screening' wherein she had to take her temperature at home and respond to a written questionnaire concerning any symptoms at home before reporting to work." *Id.*

Around November 15, 2021, Defendant informed Plaintiff she was required to take biweekly COVID-19 tests via nasal swab in the presence of her manager. *Id.* at ¶ 12. Plaintiff alleges this amounted to a change in the terms of her religious accommodation. *Id.* Plaintiff objected to the nasal swab testing, advising Defendant that "observance of her religious beliefs forbids her from being subjected to invasive COVID-19 testing via nasal swab, and requested that she be able to take a saliva test instead." *Id.* Plaintiff alleges she "thereafter awaited receipt of another religious accommodation form in order to explain in further detail why this new requirement also conflicted with her sincerely held religious beliefs, as it was Plaintiff's understanding that Defendant required all such requests to be presented on their form in order to be considered, but no such form was supplied to Plaintiff." *Id.*

"Had Plaintiff been provided" with this additional religious accommodation form, Plaintiff alleges she would have indicated the following on the form to her employer, Defendant:

> I will not take the Mark of the Beast nor anything that I believe to be the Mark of the Beast. This includes covid nasal swabs. My church identified the nasal swabs and other invasive covid measures during the alleged pandemic as a probable mark of the beast prior to any covid mandates being enforced. When they were enforced, it was clear that they are the mark. This was easily predicted by my own study of scripture and by my church. The church issued an edict warning our members against taking the mark of the beast via invasive covid measures such as nasal swabbing or vaccines. Anything with an introductory method that can possibly introduce toxins or change DNA is the mark of the beast or a precursor to it. It may change your DNA and then you are no longer made after the image of God, but after the image of man. You are patented and your spiritual side may be completely severed from God forever.

My church and my own beliefs have deemed the people and forces promoting the Covid pandemic and the edicts associated with it, to be Adversus Christus for good reason. The chemicals contained in the nasal swab kits in conjunction with the coercion and manipulation used in their enforcement clearly identify them as something scripture directs us to avoid. If they cannot mark us with the vaccination, they will mark us with the swabs. We were warned of deception regarding the mark in scripture.

Many pastors and Christian orators have been teaching their audiences about the Mark of the Beast since Christianity began. I believe that those feigning ignorance of scripture and about these widely-taught sermons, which can cause apprehension of the COVID-19 invasive measures among true Christians, may be trying to persecute Christians, making us homeless pariahs and removing us from all positions of worldly influence, by threatening our jobs and professions.

This is a clear example of biblical warnings about the Mark of the Beast. The Mark is contrary to my religious beliefs and something I know I must avoid in order to maintain my relationship with God. **It is my sincere belief that these Nasal swabs act as a carrier for the Mark of the Beast.** The actions of governments and companies throughout the COVID situation are similar to predictions within pre-Nicene scripture regarding events which true Christians are told in no uncertain terms to be aware of, watch out for, and avoid in order to preserve and sustain a relationship with God and the holy spirit which dwells inside them. These occurrences in the world are ones which scripture tells us to examine in order to determine where we are in the timeline related to Biblical prophecy. The Book of Revelation in the Bible contains the passage: "And the light of a candle shall shine no more at all in thee; and the voice of the bridegroom and of the bride shall be heard no more at all in thee: for thy merchants were the great men of the earth; for by thy sorceries were all nations deceived." The original composition of this verse was in Greek. In the original Greek, the word "sorcery" / "sorceries" is written as "pharmakeia", the definition for which is "'medication ("pharmacy"), i.e. (by extension) magic (literally or figuratively) – sorcery, witchcraft.'" In other words, scripture is describing and prophesizing the medical coercion and deception involved globally with COVID mandates. The Book of Revelations also contains the passage: "And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name." (Rev 13:17). Medical coercion to take invasive toxins, or items that have potential to alter or change DNA under threats of losing one's livelihood are clearly the Mark of the Beast. As a Christian, I must avoid something of this nature always. Additionally, invasive nasal swabs will pollute my body and I fear that the pollution of his creation may make me an unacceptable sacrifice. 1 Cor 6:19. God owns me and I must follow Him in my convictions. I am directed to be wise (Matthew 10:16) and wisdom dictates staying away from things that are easily identifiable as the Mark of the Beast, such as invasive COVID tests and shots.

I knew that when mandates and coercion began it was the true Mark of the Beast and therefore, I had no choice to avoid those invasive measures or destroy myself

spiritually. Defiling one's body with these things will destroy one's connection with God and leads to excommunication from my religion. The Bible very clearly states that the body is the Temple of the Holy Spirit. We are commanded to take good care of it, not to defile it, and certainly not introduce something into it that could potentially harm it such as COVID related items that could potentially alter one's DNA (1 Corinthians 3:16-17, 1 Corinthians 6:19-20, 2 Corinthians 5:10, and 2 Corinthians 7:1).

I understand that my employer demanded testing; yet my religion prohibits me from allowing invasive nasal swabs. Therefore, I did offer to do saliva tests. To me, saliva testing has no risk of causing the Mark due to the fact that it is not invasive to my body.

*Id.* at ¶ 13. Regardless of whether Plaintiff was able to share this statement, Plaintiff alleges, "Defendant either knew or should have known that Plaintiff required a religious accommodation from its requirement that she test for COVID-19 via nasal swab, but did not engage in any interactive process with her whatsoever concerning same, or advise her to submit another request form." *Id.* at ¶ 14. Instead, Plaintiff alleges, Defendant suspended her without pay on November 19, 2021. *Id.*

On November 23, 2021, Plaintiff sent an e-mail to Defendant "express[ing] [her] beliefs" regarding "invasive" COVID-19 "testing." *Id.* at ¶ 15; pgs. 25-26. Plaintiff's e-mail states that if Defendant "wishes to protect staff and patients from possible infections, then it should be acknowledged that weekly [COVID-19] testing should be required for all staff" because "a growing body of peer-reviewed research is demonstrating that covid vaccinated people are just as likely to contract and spread this illness." *Id.* Plaintiff's e-mail then cites to a medical journal article to support the proposition that "[t]here is increasing evidence that vaccinated individuals continue to have a relevant role in [COVID-19] transmission." *Id.* Plaintiff's e-mail states that Plaintiff is "willing to abide by reasonable accommodations that do not discriminate against me for my religious beliefs." *Id.*

6

On December 6, 2021 Plaintiff sent another email to Defendant asking whether "there has been any progress on the consideration of using saliva tests or religious exemptions for the nasal swab?" *Id.* at ¶ 16; pg. 27.

That same day, "[r]ather than receive a response to these lines of inquiry," Plaintiff's employment was terminated by Defendant. *Id.* at ¶ 16.

Plaintiff also alleges that, in October 2021, Defendant issued an influenza vaccine mandate for all staff. *Id.* at ¶ 10. On October 26, 2021, Plaintiff submitted a written religious accommodation request for the influenza vaccine, stating:

> [I] [h]ave [] religious beliefs over the past years that have changed numerous aspects of my life and impact what I can allow in my body because this impacts my relationship with [G]od. I have given up meat, supplements, medications. I have a bona fide religious and philosophical disagreement with flu vaccines, abortion, and consumption of meat.

*Id.* at pg. 20. On October 29, 2021, Defendant denied Plaintiff's accommodation request. *Id.* at ¶ 11. In so doing, Plaintiff alleges Defendant failed to engage in any interactive process with Plaintiff. *Id.* "However," the Complaint avers, "Defendant took no adverse employment action against [Plaintiff] immediately following its denial of the influenza vaccine religious accommodation request." *Id.*

Plaintiff's Amended Complaint brings two counts. Count One alleges Defendant's conduct constitutes unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 under the theories of "hostile work environment," "failure to accommodate," "quid pro quo," "disparate treatment," and "retaliation." *Id.* at ¶¶ 19-28. Count Two brings a related state law claim, alleging Defendant's conduct constitutes unlawful employment discrimination in violation of the Pennsylvania Human Rights act. *Id.* at ¶¶ 29-31.

### c. **DEFENDANT'S MOTION TO DISMISS**

Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint in its entirety ("Motion") on March 21, 2023. *See* ECF No. 18. Defendant contends this Court should dismiss Count One, Plaintiff's Title VII claim, because Plaintiff fails to plausibly plead that she holds a sincerely held religious belief conflicting with Defendant's required bi-weekly COVID-19 testing by way of a nasal swab. *Id.* at pgs. 7-8 of 18. Defendant argues that Plaintiff's objection to nasal swab COVID-19 testing is "personal and social and not spiritual." *Id.* at pg. 9 of 18. Although Plaintiff alleges Defendant failed to provide her with a form "in order to explain in further detail why this new testing requirement conflicted with her sincerely held religious beliefs," Defendant argues that "[t]ellingly, however Ms. Blackwell did in fact provide LVHN with the reason why her alleged religious beliefs precluded her from being subjected to COVID-19 testing via nasal swab" in her November 23, 2021 e-mail which, according to Defendant, "is best described as her views on contentious social and political issues – i.e., the effectiveness and propriety of COVID-19 testing to protect individuals from contracting COVID-19" and not an expression of religious views. *Id.* at pg. 10 of 18.

Plaintiff's new allegations, Defendant argues, that Defendant failed to provide her with a form to explain her religious beliefs in opposition to COVID-19 nasal swab testing, are tantamount to an admission that Plaintiff "did not provide her newly alleged religious beliefs contained in paragraph 13 of her Amended Complaint to LVHN at the time when she made the objection to the nasal swab." *Id.* at pg. 11 of 18. Defendant argues that "Plaintiff cannot now for the first time over a year after she objected to the nasal swab rely on these reasons" because they were not shared with Defendant at the time Plaintiff made the accommodation request. *Id.*

To the extent Plaintiff alleges religious discrimination related to the influenza vaccine, Defendant argues this too must be dismissed because Plaintiff fails to allege she sustained an adverse employment action for not receiving the influenza vaccine. *Id.* at pg. 15 of 18.

Plaintiff filed a Brief in Opposition to Defendant's Motion on April 12, 2022 ("Response"). *See* ECF No. 19. Plaintiff's Response first contends that to the extent Defendant seeks dismissal of Plaintiff's Complaint with prejudice, Defendant improperly seeks summary judgment. *Id.* at pgs. 5-7 of 13. Next, Plaintiff contends that the Amended Complaint sufficiently recites facts indicating why Defendant's requirements of COVID-19 nasal swab testing conflicted with Plaintiff's sincerely held religious beliefs as a Marcionite Christian. *Id.* at pg. 8 of 13. Plaintiff contends that Defendant's decision to take adverse employment action against Plaintiff after she advised Defendant of her conflicting religious beliefs amounts to both failure to accommodate and retaliation under Title VII. *Id.* at pg. 11 of 13.

### III.    LEGAL STANDARD

Defendant moves to dismiss Plaintiff's claim pursuant to Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 Fed. Appx. 147, 149 (3d. Cir. 2016) (quoting *Morrow v.*

9

*Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV.   ANALYSIS

### a.   Count One of Plaintiff's Amended Complaint is Dismissed With Prejudice: Plaintiff's Beliefs in Opposition to COVID-19 Nasal Swab Testing Requirement Shared With Defendant Were Not Religious in Nature; Additional Purported Religious Beliefs Plead in Amended Complaint Were Not Shared With Defendant at the Time Accommodation Was Sought

Count One of Plaintiff's Amended Complaint alleges Defendant Violated Title VII of the Civil Rights Act of 1964. *See* Amended Compl. at ¶¶ 19-28. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…religion." 42 U.S.C. § 2000e-2(a)(1).  The term "religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's…religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a *prima facie* case of religious discrimination under Title VII, an employee must show: (1) they "held a sincere religious belief that conflicted with a job requirement," (2) they informed their employer of the conflict, and (3) they were "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017). To survive a motion to dismiss, an employee need not "establish each element" of this test, but rather, "simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, No. 4:21-cv-01903, 2022 U.S. Dist.

LEXIS 154512 at *9 (M.D. Pa. Aug. 26, 2022) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

In its January 23, 2023 Memorandum Opinion and Order (ECF Nos. 14, 15) this Court held that Plaintiff failed to plausibly plead the first prong of her *prima facie* religious discrimination claim because Plaintiff failed to plead that the purported reasons she shared with Defendant for refusing to submit to Defendant's COVID-19 testing requirement were religious in nature. *See generally* ECF No. 14. Plaintiff now amends her Complaint. However, Plaintiff does not plead any new allegations regarding the character of her purported religious beliefs ***that she informed Defendant of at the time Plaintiff sought the accommodation***.

Therefore, Plaintiff again fails to plausibly plead the first prong of her *prima facie* religious discrimination claim because, under the Third Circuit's test established in *Africa v. Commw. of Pa.*, 662 F.2d 1025 (3d Cir. 1981), Plaintiff's objections to biweekly COVID-19 testing by way of a nasal swab on the grounds that such testing is a violation of her sincerely held religious beliefs against "being subjected to invasive COVID-19 testing via nasal swab," and pursuant to her beliefs that such testing is "ineffective" are not religious beliefs under law. *See* Amended Compl. at ¶ 2; pg. 25.

It is not this Court's province to "question the centrality of particular beliefs or practices of faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). Determination of whether Plaintiff's beliefs are religious must not "turn upon a judicial perception of the particular belief or practice in question." *Ambrose v. Gabay Ent & Assocs., P.C.*, No. 12-5453, 2013 U.S. Dist. LEXIS 115353 at *9 (E.D. Pa. Aug. 15, 2013) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981)). "Courts

'are not free to reject beliefs because they consider them 'incomprehensible,' because 'religious beliefs need not be acceptable, logical, consistent, or comprehensible to others.'" *Id.* at \*10 (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965) then *Thomas*, 450 U.S. at 714).

This Court's inquiry into whether Plaintiff has plausibly plead the first prong of her *prima facie* religious discrimination claim is limited only "to determining whether the belief is (1) 'sincerely held' and (2) religious within the plaintiff's 'own scheme of things.'" *Id.* at \*12 (quoting *Welsh v. United States*, 398 U.S. 333, 339 (1970)). With respect to part one (1) of this inquiry, the Court finds Plaintiff's beliefs are sincerely held.

With respect to part two (2) of this inquiry, this Court remains conscious that determining whether Plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). However, "the very concept of ordered liberty" precludes this Court from allowing any person "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Id.* (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)).

In determining whether an employee's beliefs are religious, the Third Circuit considers three factors first articulated in *Africa v. Pennsylvania*: whether the beliefs (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) are "comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Brown v. Children's Hosp. of Phila.*, 794 Fed. Appx. 226, 227 (3d Cir. 2020) (quoting *Fallon v. Mercy Catholic Med. Ctr. Of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)). With respect to the first factor, beliefs address "fundamental" and "ultimate" questions when they "consider and attempt to come to terms with what could best be described as 'ultimate' questions-questions having to do with,

among other things, life and death, right and wrong, good and evil." *Africa*, 662 F.2d at 1033. With respect to the second factor, beliefs must be "comprehensive" to be religious – "a religion must consist of something more than a number of isolated, unconnected ideas" indeed, a "religion is not generally confined to one question or one moral teaching; it has a broader scope. It lays claim to an ultimate and comprehensive 'truth.'" *Id.* at 1035 (quoting *Malnak v. Yogi*, 592 F.2d 197, 209 (3d Cir. 1979)). As for the third factor, "in ascertaining whether a set of ideas should be classified as a religion" courts look to "any formal, external, or surface signs that may be analogized to accepted religions" such as "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with the traditional religions." *Id.* at 209.

"Claims of religious discrimination present a unique and difficult challenge for judges." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, No. 21-cv-4024, 2021 U.S. Dist. LEXIS 183966 at *13 (E.D. Pa. Sept. 27, 2021). While judges "are ill-equipped to examine the breadth and content of an avowed religion…when an individual invokes the first amendment to shield himself or herself from otherwise legitimate state regulation" courts "are required to make such uneasy differentiations." *Id.* (quoting *Africa*, 662 F.2d at 1031).

Here, the Court examines the beliefs Plaintiff pleads she actually ***informed Defendant of***, which conflict with Defendant's COVID-19 nasal swab testing requirement. Plaintiff pleads that, upon learning of the Defendant's COVID-19 nasal swab testing requirement, she "promptly advised her supervisor…that observance of her religious beliefs forbids her from being subject to invasive COVID-19 testing via nasal swab, and requested that she be able to take a saliva test instead." *See* Amended Compl. at ¶ 12. Plaintiff also attaches to her Amended Complaint an e-mail that she sent to Defendant on November 23, 2021 "express[ing] her beliefs clarifying invasive

testing" wherein Plaintiff informed Defendant that her opposition to Defendant's COVID-19 nasal swab testing requirement was based on "a growing body of peer-reviewed research…demonstrating that covid vaccinated people are just as likely to contract and spread this illness" and expressing Plaintiff's belief that "[b]eing singled out for mandatory testing is discrimination and constitutes harassment and retaliation for my religious beliefs." *Id.* at pg. 25. The November 23, 2021 letter to Defendant does not identify what Plaintiff's religious beliefs are.

Although Plaintiff does not plead whether she shared the following beliefs with Defendant, Plaintiff also pleads that, as a Marcionite Christian, she "must maintain the sanctity of her body against the desecration, invasion and/or alteration thereof, which includes being compelled to undergo any unwanted medical procedure or receive a vaccine or injection against her will which would introduce substances or insert items into her body that she believes to be unholy." *Id.* at ¶ 2.

Plaintiff's expressed belief that her religion precludes her from undergoing COVID-19 nasal swab testing that she deems "invasive," "unwanted," "unholy," or "ineffective" is not a religious a belief within the meaning of Title VII. Federal courts routinely decline to hold beliefs that "would amount to a blanket privilege" are religious beliefs for the purpose of a Title VII religious discrimination claim. *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. Aug. 26, 2022).

In *Finkbeiner*, the court dismissed a plaintiff's Title VII religious discrimination claim against her employer after she was terminated for refusing to comply with a workplace requirement that all unvaccinated employees be tested biweekly for COVID-19 on the basis that, as a Christian, she has "a God given right to make my own choices regarding what is good or bad for me." *Id.* at

463. The Court dismissed the plaintiff's claim with prejudice, holding that "her belief that she has a 'God given right to make her own choices –which, implicitly, her employer must unfailingly respect—would amount to a 'blanket privilege' and a 'limitless excuse for avoiding all unwanted obligations.'" *Id.* at 465.

In *Ellison*, the court dismissed a plaintiff's Title VII religious discrimination claim based on the plaintiff's refusal to take the COVID-19 vaccine. *Ellison v. Inova Health Care Servs.*, No. 1:23-cv-00132, 2023 U.S. Dist. LEXIS 124861 at *12 (E.D. Va. July 19, 2023). There, the plaintiff claimed that, as a Christian, he has the right to refuse the vaccine because "the Bible requires Christians to treat their bodies as 'temples of the Holy Spirit,' meaning that he is 'compelled' to care for his mind and body." *Id.* at *11. The court held that, "though couched in religious terms," the plaintiff's refusal to take the COVID-19 vaccine was "based on concerns of vaccine safety," not religious beliefs. *Id.* at *12. The court further noted that "[d]istrict courts have routinely rejected similar claims." *Id.*

Moreover, an employee fails to state a Title VII religious discrimination claim if the employee's beliefs are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490 (quoting *United States v. Seeger*, 380 U.S. 163, 165 (1965)). In *Brown*, the Third Circuit again applied the *Africa* factors to hold a former employee failed to state a Title VII religious discrimination claim against her employer where her opposition to an employee vaccination requirement was "a medical belief, not a religious one." *Brown*, 794 Fed. Appx. at 227-28.

Here, Plaintiff pleads that, upon learning of the Defendant's COVID-19 nasal swab testing requirement, she "promptly advised her supervisor…that observance of her religious beliefs forbids her from being subject to invasive COVID-19 testing via nasal swab, and requested that

15

she be able to take a saliva test instead." *See* Amended Compl. at ¶ 12. Plaintiff also attaches e-mail correspondence she sent to her employer stating her reasons for refusing to submit to the COVID-19 nasal swab testing requirement, wherein Plaintiff challenges the factual and scientific basis for Defendant's testing requirement, contending that COVID-19 testing is "ineffective" and that vaccinated individuals "are just as likely to contract and spread" COVID-19 as unvaccinated individuals, and cites to a medical journal article as supporting evidence. *Id.* at pgs. 25-26.

Taken as a whole, the beliefs in opposition to Defendant's COVID-19 testing requirement expressed by Plaintiff to Defendant amount to assertions of a "blanket privilege" to refuse to undergo "invasive" testing requirements, and beliefs challenging the ***factual*** and ***scientific*** basis for imposing the testing requirement, which suggests the basis for Plaintiff's belief is "political, sociological, or philosophical" – and not religious. *Fallon*, 877 F.3d at 490 (quoting *Seeger*, 380 U.S. at 165 (1965)). *See also Passarella v. Aspirus, Inc.*, No. 22-cv-287, 2023 U.S. Dist. LEXIS 40958 at *13-14 (W.D. Wis. Mar. 9, 2023) (dismissing with prejudice plaintiff's religious discrimination claim after plaintiff refused vaccine based on plaintiff's Christian belief that her body is a temple of the Holy Spirit, holding "the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion.").

Accordingly, and consistent with this Court's January 23, 2023 Memorandum Opinion and Order (ECF Nos. 14, 15), the Court finds that Plaintiff's Amended Complaint, as a matter of law, fails to plead that Plaintiff informed her employer of a ***religious*** belief in opposition to the Defendant's COVID-19 testing requirement within the meaning of Title VII.

That Plaintiff's Amended Complaint now adds a lengthy paragraph pleading Plaintiff's religious belief that her church "identified the nasal swabs and other invasive covid measures

during the alleged pandemic as a probable mark of the beast" does not alter the Court's calculus. *See* Amended Compl. at ¶ 13. By Plaintiff's own pleading, Plaintiff did not inform Defendant of these purported religious beliefs at the time she sought the religious accommodation from Defendant. *Id.* Such failure to inform the Defendant, Plaintiff pleads, was due to Defendant's failure to provide Plaintiff with "another religious accommodation form in order to explain in further detail why this new [COVID-19 nasal swab testing] requirement also conflicted with her sincerely held religious beliefs." Yet, it is the ***employees*** who are "required…to inform their employers of their religious beliefs in order to make a out a prima facie case of discrimination based on failure to make reasonable accommodations." *Geraci v. Moody-Tottrup, Int'l*, 82 F.ed 578 (3d Cir. 1996).

Moreover, Plaintiff's assertion that her failure to inform Defendant of these beliefs was due to Defendant's failure to provide her with an additional accommodation form is undercut by Plaintiff's own pleading that she informed Defendant of her beliefs in opposition to the testing requirement multiple times. Indeed, Plaintiff pleads that she informed her supervisor "that observance of her religious beliefs forbids her from being subjected to invasive COVID-19 testing via nasal swab," and Plaintiff attaches to the Complaint the November 23, 2021 e-mail she sent to Defendant in order "to express my beliefs clarifying invasive covid testing." *See* Amended Compl. at ¶ 12; pg. 25. Although sincerely held, the beliefs expressed to Plaintiff's supervisor amount to an assertion of "blanket privilege" not recognized as a religious belief, and the beliefs expressed in the November 23, 2021 e-mail are not religious in nature, but rather challenge the factual and scientific basis for Defendant's nasal swab testing requirement.

Therefore, although Plaintiff's Amended Complaint now pleads additional purported religious beliefs in opposition to nasal swab COVID-19 testing, because the Amended Complaint

also pleads that Plaintiff failed to inform Defendant of these beliefs, these beliefs cannot form the basis of her religious discrimination claim. *See Sidelinger v. Harbor Creek Sch. Dist.*, No. 02-62, 2006 U.S. Dist. LEXIS 86703 at *23-24 (W.D. Pa. Nov. 27, 2006) (holding plaintiff, former schoolteacher, failed to set forth prima facie case of religious discrimination against former employer, school district, because plaintiff "failed to provide sufficient notice to the School District of his religious belief"). *See also Morrison v. Access Servs.*, No. 14-4685, 2014 U.S. Dist. LEXIS 146803, at *11 (E.D. Pa. Oct. 15, 2014) (holding plaintiff failed to establish prima facie case of employment discrimination based on religion where "there is no mention of whether [the plaintiff] had informed her employer of her 'independent religious beliefs,' prior to her termination.").

Lastly, that Plaintiff pleads "Defendant either knew or should have known that Plaintiff required a religious accommodation from its requirement that she test for COVID-19 via nasal swab" does not save her Amended Complaint. For one, the Court is not required to accept a "legal conclusion couched as a factual allegation" in deciding a motion to dismiss. *Wheeler*, 639 Fed. Appx. at 149. Second, Courts have explicitly held that, in order to make out a prima facie case for discharge on account of religion, employees must affirmatively demonstrate, or in this case allege, that they actually informed their employer of their religious beliefs. *Brown v. Children's Hosp. of Phila.*, No. 18-2363, 2018 U.S. Dist. LEXIS 191968 at *5-6 (E.D. Pa. Nov. 9, 2018) ("because an 'employee's religion . . . is often unknown to the employer,' the United States Court of Appeals for the Third Circuit has required 'that employees [have] informed their employers of their religious beliefs prior to the alleged discriminatory action' in order to make out a prima facie case for discharge on account of religion.") (quoting *Geraci v. Moody—Tottrup, Intern., Inc.*, 82 F.3d 578, 581 (3d Cir. 1996)).

To survive a motion to dismiss a Title VII religious discrimination claim, a plaintiff must "allege sufficient facts" that, if proven, would establish (1) they "held a sincere religious belief that conflicted with a job requirement," (2) they informed their employer of the conflict, and (3) they were "disciplined for failing to comply with the conflicting requirement." *Fallon*, 877 F.3d at 490. Because Plaintiff's Complaint, as drafted, fails to allege sufficient information to claim Plaintiff's sincerely held belief conflicting with Defendant's COVID-19 testing requirement is religious, the Court must dismiss Plaintiff's Title VII claim.[1] Moreover, because it is clear form

---

[1] Plaintiff also fails to plead a claim for religious discrimination under Title VII arising out of Plaintiff's religious objection to Defendant's flu vaccination requirement, because Plaintiff does not allege that she was "disciplined for failing to comply with" Defendant's flu vaccination requirement. *Fallon*, 877 F.3d at 490. Indeed, Plaintiff's Complaint expressly states, "Defendant took no adverse employment action against [Plaintiff] immediately following its denial of the influenza vaccine religious accommodation request" and pleads that she was suspended and ultimately terminated by Defendant only after requesting religious accommodation from Defendant's requirement that she test for COVID-19 via nasal swab. *See* Amended Compl. at ¶¶ 10-17. Moreover, Defendant's Motion to Dismiss contends that Plaintiff "does not allege that she was terminated or in any way disciplined for not having the influenza vaccine." *See* Defendant's Motion to Dismiss at pg. 15 of 18. [ECF No. 18]. Neither Plaintiff's Amended Complaint (ECF No. 17) nor Plaintiff's Response (ECF No. 19) assert that Plaintiff was suspended, and ultimately terminated by Defendant for her refusal to take the influenza vaccine.

Plaintiff's Amended Complaint pleads that Count I is brought under the legal theories of "failure to accommodate," "disparate treatment," "retaliation," "quid-pro-quo," and "hostile work environment." *See* Amended Compl. at ¶ 26. Because Plaintiff's Amended Complaint fails to plead that her suspension and termination was due to a sincerely held ***religious*** belief, Plaintiff's Complaint fails to plead a cause of action for religious discrimination under Title VII pursuant to any of these theories of liability. *See Wallace v. City of Philadelphia*, No. 06-4236, 2010 U.S. Dist. LEXIS 42437 at *21 (E.D. Pa. Apr. 26, 2010) ("In the Third Circuit, employees may rely on two different theories to establish a claim for religious discrimination: 'disparate treatment' ***on account of religion***, or 'failure to accommodate' ***religious*** beliefs.") (emphasis added) (*citing Abramson v. William Paterson College of N.J.*, No. 1:19-cv-1507, 260 F.3d 265, 281 (3d Cir. 2001)); *Refat v. Franklin Fin. Servs. Corp.*, 2021 U.S. Dist. LEXIS 117768 at *15 n.6 (M.D. Pa. June 24, 2021) (holding an employee fails to state a Title VII retaliation claim based on an employer's denial of a religious accommodation request "because 'merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a ***religious*** accommodation") (emphasis added) (quoting *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018)); *Douglas v. Sentel Corp.*, No. 1:18-cv-1534, 2020 U.S. Dist. LEIS 89421 at *9 (E.D. Va. May 21, 2020) (Title VII hostile work environment claim must be "based on religious belief."). Lastly, as per

the facts plead in the Complaint and Amended Complaint that Plaintiff is unable to state a Title VII religious discrimination claim upon which relief may be granted, dismissal is with prejudice.

### b. Count Two: The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claim

Pursuant to 28 U.S.C. § 1367(c)(3), a federal district court may decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction." Because this Court dismisses Count One of Plaintiff's Amended Complaint, brought under Title VII of the Civil Rights Act of 1964 over which this Court held original federal question jurisdiction pursuant to 28 U.S.C. § 1331, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for violation of the Pennsylvania Human Relations Act. *See Diprato v. Bernstiel*, No. 21-507, 2022 U.S. Dist. LEXIS 11962 at *15 n.1 (E.D. Pa. Jan. 24, 2022) (after dismissing Title VII claim, dismissing Plaintiffs' state law claims as well, holding "[a]s this case is in the early stages of litigation, there is no compelling reason to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims."); *Goodwin v. Seven-Up Bottling Co.*, No. 96-cv-2301, 1996 U.S. Dist. LEXIS 15448 at *19 (E.D. Pa. Oct. 21, 1996) (declining to exercise supplemental jurisdiction over related state law claims after dismissing Title VII count, holding "retaining the state law claims will not serve the court's interest in fairness to the litigants. Because it is a relatively early stage in this litigation, the decision to dismiss the state claims at this point will occur before substantial expenditure of time, effort, and money by the parties in preparing the state claims for trial in federal court.").

---

*Wallace*, and as cited *supra*, the Third Circuit recognizes only two different theories of religious discrimination claims under Title VII: disparate treatment and failure to accommodate. *Wallace*, 2010 U.S. Dist. LEXIS 42437 at *21. Accordingly, this Court "declines to write or produce new law by finding a claim for quid pro quo religious harassment exists." *Quinones v. Donahoe*, No. 1:13-cv-1553, 2014 U.S. Dist. LEXIS 77779 at *7 (E.D. Cal. June 4, 2014).

**V.    CONCLUSION**

Based on the foregoing, this Court dismisses Plaintiff's Complaint with prejudice. An appropriate order follows.



BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge